[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS
The two defendants, Office of Health Care Access and Charlotte Hungerford Hospital, move to dismiss this administrative appeal on the ground the plaintiff, Visiting Nurse Services of Connecticut, Inc., is not aggrieved by the decision from which it appeals. The Office of Health Care Access is the successor to the Commission on Hospitals and Health Care. The commission ruled that the hospital's plan to offer home health care services is exempt from the provisions of General Statutes § 19a-154[1] which require a health care facility or institution to obtain a certificate of need before introducing any additional function or service into its program of health care. Because this court concludes that competitors are not within the zone of interests the legislature sought to protect when it enacted the statutes relating to, health care facility or institution to obtain a certificate of need before introducing any additional function or service into it program of health care. Because this court concludes that competitors are not within the zone of interests the legislature sought to protect when it enacted the statutes relating t certificates of need, this court finds that the plaintiff is not aggrieved by the commission's decision. Accordingly, the motion to dismiss is granted.
The following account of the facts is based on the allegations made by Visiting Nurse Services of Connecticut, Inc. (VNS) in its appeal petition. VNS is licensed as a home health care agency pursuant to General Statutes § 19a-490 et seq. For six years, VNS has provided home health care services in the Torrington area of Connecticut. Charlotte Hungerford Hospital is a non-profit, acute care hospital located in Torrington. In November of 1993, the hospital filed with the commission a certificate-of-need (CON) application in which the hospital proposed that it be allowed to establish a home health care agency in Torrington. The commission approved the application but limited the hospital to providing home care to maternity patients who were discharged early. On August 3, 1994, the hospital filed another application with the commission. In the second application, the hospital requested the commission to modify its previous order and allow the hospital to provide a broader range of home health care services. VNS asked to be made a party to the proceedings on the second application. CT Page 664
On May 16, 1995, the commission advised the hospital that the commission would not act upon the hospital's application because home health care services are exempt from the CON application requirements. The hospital thereafter requested the commission to issue a formal ruling addressing the commission's jurisdiction over the hospital's application.
The commission scheduled a hearing for June 23, 1995, on the hospital's request for a ruling, notified counsel for VNS of the June 23rd hearing, and accorded VNS intervenor status. The commission indicated that VNS would be heard with respect to the commission's jurisdiction over the hospital's application but not with respect to the merits of the application. On June 22, 1995, VNS filed a request for ruling and a "Cross-Petition for Declaratory Ruling." At the hearing, VNS sought to be heard on its petition to be made a party to the proceedings and on its cross-motion for a declaratory ruling. The commission reiterated its position that VNS would be accorded only intervenor status and denied VNS's motion for a declaratory ruling.
On June 30, 1995, the commission issued a decision in which it stated the hospital was exempt from the CON application requirements of § 19a-154.[2] VNS appeals from this decision.
VNS alleges that the commission's actions "were in violation of statutory provisions, in excess of the statutory authority of the Commission, made upon unlawful procedure, clearly erroneous, arbitrary and an abuse of the Commission's discretion . . . ." VNS requests the court to vacate the commission's decision and remand the case to the commission for further consideration of the hospital's application.
The hospital and the commission have moved to dismiss VNS's appeal petition. They claim VNS is not aggrieved by the commission's decision.
 I
"Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." United Cable Television Services Corp.v. Department of Public Utility Control, 235 Conn. 334, 342, CT Page 665663 A.2d 1011 (1995); see also Light Rigging Co. v. Department ofUtility Control, 219 Conn. 168, 172, 592 A.2d 396 (1991).
"[T]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest has been adversely affected. . . ." United Cable Television Services Corp. v.Department of Public Utility Control, supra, 235 Conn. 342-43; see also New England Rehabilitation Hospital v. Commission on Hospitalsand Health Care, 226 Conn. 105, 121, 627 A.2d 1257 (1993). "Thus, in considering whether a plaintiff's interests has been injuriously affected . . ., we [the Connecticut Supreme Court] have looked to whether the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for [its] complaint." (Emphasis in original.)United Cable Television Services Corp. v. Department of PublicUtility Control, supra, 235 Conn. 344-45.
"Aggrievement is a question of fact for the trial court and a plaintiff has the burden of proving that fact." New EnglandRehabilitation Hospital v. Commission on Hospitals and Health Care, supra, 226 Conn. 120. "It [is] the function of the trial court to determine, first, whether the [plaintiff's] allegations, if proved, would constitute aggrievement as a matter of law, and second, whether the plaintiffs had proved the truth of those allegations." Id., 122.
 II
The hospital and commission contend that VNS is not aggrieved by the commission's decision. They argue that VNS can not satisfy the first prong of the aggrievement test because VNS, while certified to provide home health care services, does not possess an interest in its certificate of the type that has been construed to create a "specific personal and legal interest" in the subject matter of the commission's decision.[3] They also argue that the CT Page 666 increase in competition that VNS contends would result from the ruling is not within the zone of interests protected by the statutes under which the commission acted.
VNS contends the fact that it holds a certificate which allows it to provide home health care services, combined with the fact that it is an existing competitor in the Torrington area, shows VNS has an interest sufficient to satisfy the first prong of the aggrievement test. VNS further argues that the impact of the hospital's application on existing home health care providers falls within the zone of the interests that the statutes were intended to protect.
The Supreme Court of Connecticut has, on at least four recent occasions, addressed the issue of aggrievement in cases in which competitors or potential competitors have appealed decisions by administrative agencies concerning licenses, permits, certificates, or franchises to engage in various regulated activities. SeeUnited Cable Television Services Corp. v. Department of PublicUtility Control, supra, 235 Conn. 334; New England RehabilitationHospital of Hartford, Inc. v. Commission on Hospitals and HealthCare, supra, 226 Conn. 105; Light Rigging Co. v. Department ofPublic Utility Control, supra, 219 Conn. 168; State Medical Societyv. Board of Examiners in Podiatry, 203 Conn. 295 524 A.2d 636
(1987). All four of these cases are relied upon by each of the parties to this appeal. Applying the principles ennuciated in these cases, this court concludes VNS has not proven aggrievement.
A plaintiff cannot be aggrieved unless he or she falls within the zone of interests sought to be protected by the relevant statutes. See United Cable Television Services Corp v. Departmentof Public Utility Control, supra, 353. In the present case, the statutes pursuant to which VNS claims the hospital must submit an application are §§ 19a-153 and 19a-154. These statutes were also at issue in New England Rehabilitation Hospital of Hartford, Inc.v. Commission on Hospitals and Health Care, supra, 108, 125. One of the grounds upon which the New England Rehab. court determined that the plaintiffs were not aggrieved was that "[t]here is no specific statutory requirement . . . on the part of [the commission] to consider the impact of an application on existing health care facilities." See United Cable Television Services Corpv. Department of Public Utility Control, supra, 235 Conn. 347, 351. VNS argues that the court's zone of interests analysis in NewEngland Rehab. is dictum. There is, however, no indication in the text of the opinion that the court viewed any of the stated grounds CT Page 667 for its decision as more compelling than any other.
VNS also argues that the New England Rehab. court's finding that the statutes do not require the commission to consider the impact upon competitors is factually inaccurate. VNS contends that the regulations promulgated pursuant to the CON statutes demonstrate that competitors' interests fall within the zone of interests which the statutes were intended to protect. In support of their position, VNS cites sections 19a-160-73, 19a-160-50(c)(6), (9), and 19a-166-66 of the Regulations of Connecticut State Agencies.[4]
If the provisions of the regulations cited by VNS were contained in the statutory provisions governing the issuance of CONs, the interests of competitors might, arguably, fall within the zone of interests of those statutes. The commission, however, cannot expand the scope of the interests the legislature intended to protect. It is the legislature's intent, not the commission's, that defines the scope of interests. See, e.g., Air CourierConference v. Postal Workers, 498 U.S. 517, 524, 111 S.Ct. 913,112 L.Ed.2d 1125 (1991) ("[w]e must inquire then as to Congress' intent in enacting the PES in order to determine whether postal workers were meant to be within the zone of interests protected by those statutes."); New England Rehab., supra, 226 Conn. 126, citingAssociation of Data Processing Service Organizations, Inc. v. Camp,397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). ("At issue was whether Congress, in passing the statute, intended to protect data processors in companies other than banks from bank competition.") "The legislature has demonstrated an ability to protect existing competitors when it chooses to do so." UnitedCable Television Services Corp v. Department of Public UtilityControl, supra, 235 Conn. 351. Moreover, it is not within this court's power to declare factually inaccurate the Supreme Court's determination in New England Rehab., supra, 226 Conn. 125, that "[t]here is no specific statutory requirement . . . on the part of CHHC to consider the impact of an application on existing health care facilities."
The hospital maintains that the legislative history pertaining to §§ 19a-153 and 19a-154 reveals a legislative intent to encourage competition in the home health care industry. The hospital argues that the legislature could not have expressed this intent and also have intended to protect home health care agencies from competition. VNS, on the other hand, argues that the legislative history demonstrates that the legislature intended to lighten the CT Page 668 regulatory burden on smaller health care facilities, like VNS, but not to exempt hospitals from regulation in this area.
The legislative history does not show that the legislature intended to protect the interests of anyone except the general public. The legislative history merely suggests an intent to encourage the development of comparatively inexpensive alternatives to inpatient care, such as home health care. There is no indication that the legislature wished to encourage competition among home health care agencies or wanted to benefit smaller agencies at the expense of hospitals. The excerpts of the legislative history relied upon by the hospital and VNS do not support either party's arguments.
 III
Because existing competitors are not within the zone of interests that the legislature sought to protect in enacting the CON statutes, VNS has failed to demonstrate that it has been aggrieved by the commission's decision. VNS does not have standing to bring the present appeal.
The motion to dismiss is granted.
THIM, JUDGE